DESCALZI et al. v. VAN DYKE J. LINDSAY, Inc., et al.

(Circuit Court of Appeals, Second Circuit. November 12, 1919.)

No. 36.

ACCOUNT, ACTION ON ⊂⊃20(2)—SUIT FOR ACCOUNTING UNDER CONTRACT.
   Statement by a special master of mutual accounts under a contract be-
tween produce dealers for pooling business reviewed.

Appeal from the District Court of the United States for the South-
ern District of New York.

Suit in equity by Joseph F. Descalzi and others, copartners as the
Descalzi Bros. Company, against Van Dyke J. Lindsay, Incorporated,
and Dujardin & Lodwick, Incorporated. From the decree, both par-
ties appeal. Reversed.

Maurice B. Gluck, of New York City, for plaintiffs.

Wood, Cooke & Seitz, of New York City (William G. Cooke and
Howard O. Wood, both of New York City, of counsel), for defendants.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, Circuit Judge. We shall refer to the parties herein as
plaintiffs and defendants, as in the court below. The plaintiffs sought
to recover $14,930.16 damages for breach of contract. The answer in-
terposed a counterclaim, in which an accounting was sought of the
business had between the plaintiffs and the defendants, and that the
defendants be awarded such sums as were found to be due them.

On the 31st of January, 1913, the plaintiffs and defendants entered
into a business arrangement dealing in produce, and also as importers
and dealers in foreign produce, pursuant to a written contract. After
carrying on the business for some time, an account was had between
them. The defendants prepared a statement of profits and expenses,
showing that the plaintiffs were entitled to $2,562.69. The claim of
the complaint is that the auditors, in preparing the statement, did, un-
der instructions from the defendants, and with intent to defraud the
plaintiffs, falsify the accounts, depriving the plaintiffs of the sum of
$438.40; also that there was improperly charged in the auditor's ac-
count, the sum of $650, that the defendants gave false accounts of their
expenses, and that the account of the sales were fraudulent. The case
was referred to a special master, who awarded the plaintiffs a judg-
ment of $759.33. This report was confirmed by the District Judge.
The fees of the special master, amounting to $1,000, together with
two-thirds of the stenographer's bill of $281, were charged against the
defendants. Dissatisfaction with the special master's report and the
confirmation thereof by the District Judge has resulted in these appeals.

The contract under which the parties engaged in this business pro-
vides that, of the profits made by the three concerns the defendants
should take 85 per cent. and the plaintiffs 15 per cent. The special
master reached his conclusions by taking the gross sales and inventory
at the end of the term, adding that together, and then deducting the
inventory at the beginning, the purchaser's duty, freight, and all ex-

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

penses, except those referred to in the eighth clause of the contract. The eighth clause provides:

"It is agreed that expenses for heat, light, rent, telephone, salary, ice, postage, stationery, and printing are to be divided by the parties hereto in equal proportions."

These items the special master divided equally between the plaintiffs and defendants. The evidence discloses it was so intended by the eighth clause, because the plaintiffs were at that time carrying on, at the same place of business, what is referred to as a domestic business, which consisted of dealings in California fruits and chestnuts. This was a larger and more profitable business than that carried on under the contract in question.

The first assignment of error has to do with an allowance as a credit to plaintiffs of $1,093.30, which sum the plaintiffs claim they had just discovered during the course of the trial that they owed to one Booth, of England, for goods consigned to him, and sold by them on commission. Tosca, who made the explanation as to this discovery and to the mistake which had been made in plaintiffs' books, said one Booth shipped quantities of fruits to them from South America, to be sold on his account, and that they sent to Booth account sales bills covering these goods, and further he said:

"I find upon investigation of the gross sales of his goods, as taken from sales slips and the gross sales, as shown on the account sales (which account sales, by the way, were made up by my clerks), that there is a discrepancy in those sales of $1,865.37. In other words, this account of $1,865.27 the girls overlooked, the clerks overlooked, in making up their account sales to Mr. Booth. I found this figure by taking down all of the sales, beginning from the day Mr. Booth's goods were received, and going through those sales until I found the deficiency. Then I took the account sales, and added up the gross sales, and I found that out.

"There was only one conclusion for me to draw, and that was that Mr. Booth was entitled to that, less the commission of 10 per cent., $186.53, making the net debit of $1,678.84. That covered the period from March 1 up to and including June 15, 1913. I made this discovery when the auditors were in my office examining the books. I devoted the time, also, to examining the books. The volume of business done with Mr. Booth during that period was $7,937.27. That is the amount of sales. He has complained several times that he did not think the account sales rendered were correct. I replied, and told him that so far as I know they were correct, in not having made the account sales personally. I thought they were correct. Every time a sale was made of South American fruit, it would go on the sales record. This discrepancy did not all occur in the case of one consignment, or one return to Mr. Booth. It applied to about ten consignments. He was the only consignor we had at that time that I recollect. I cannot tell anything about the discrepancy on any one sale; only on the grand total."

The special master allowed this claim, commenting that he did so "as there was no apparent reason why they should charge themselves with that sum, unless they owed it to him," and concluded that "they did not credit Booth with all the goods he shipped them, and have adjusted the matter by allowing him the additional sum of $1,093.30." There is no competent evidence upon which to sustain the plaintiffs in charging themselves with this amount. It does not appear, by competent proof, that they actually owed this sum, but by admitting this indebtedness, or charging themselves with this sum, 85 per cent. of it,

or $929.30, would be charged against the defendants, and as a result, if erroneous, it will change the judgment in favor of the defendants. These goods were consigned to the plaintiffs by Booth for sale on commission. They were perishable, and the evidence of this transaction as to whether they were actually sold pursuant to this employment, or whether the money was transmitted and the amount thereof is wanting. It is not shown that the records, books, and papers were substantially correct, and they cannot be used as a basis for any judicial determination. Indeed the special master criticizes the careless and haphazard way in which the accounts of the plaintiffs were kept. The proofs as to the receipt of these goods, and sale and indebtedness to Booth, is meager and indefinite and not sufficiently proven. Considering all the evidence, it is sufficient to say that we are not satisfied with the proof as to this item, and it must be disallowed.

The second assignment of error relates to allowance to plaintiffs as a disbursement under clause "8" of $5,640 of the $9,500 which they paid to themselves as salaries. It appears that, before the contract between the parties hereto was made, the two defendant corporations and the plaintiffs' firm were three competing concerns engaged in the sale of fruit. The salaries paid to the plaintiffs' firm during the five years preceding this time, as compared with that paid during the plaintiffs' and defendants' copartnership period, is not out of proportion, nor can we say that it was excessive or fraudulent. We think that the court below was correct in making these allowances.

The plaintiffs complain of the allowance to defendants for bad debts. The District Court was justified in the conclusion reached as to this item and the allowance of these disputed claims. Sufficient provision is made in the decree that, if any collections are made, they will be divided between the parties pursuant to the terms of the contract.

The plaintiffs further assign as error the division made of the expenses under clause "8" of the contract. We believe that the correct conclusion was reached below. It was intended by this clause to divide the items therein referred to in equal portions between the plaintiffs and defendants, and not in the proportions designated for sharing the profits under the "third" clause.

Since we disallow the item of $1,093.30, the allowance to the defendants will be increased $929.20; the difference between this sum and that awarded by the court below to the plaintiffs gives a balance due to the defendants as against the plaintiffs, of $169.97. The defendants are therefore the successful litigants, and the award of fees to the special master, plus the stenographer's charges, must follow the judgment.

Judgment will therefore be reversed, and the defendants recover from the plaintiffs the sum of $169.97, together with the allowance of $1,000 to the special master and the stenographer's fees.

Judgment reversed.